Perry J. Schneider, Esq.
Hannah Stone, Esq.
MILODRAGOVICH, DALE
& STEINBRENNER, P.C.
620 High Park Way
P.O. Box 4947
Missoula, Montana 59806-4947
Telephone: (406) 728-1455
Telefax: (406) 549-7077
E:Mail: perrys@bigskylawyers.com
        hstone@bigskylawyers.com

Michael D. Brown, Esq. (Pending *pro hac vice* application)
Matthew Bryant (Pending *pro hac vice* application)
Zachary Schurkman, Esq. (Pending *pro hac vice* application)
OHRENSTEIN & BROWN, LLP
1305 Franklin Ave., Suite 300
Garden City, NY 11530
Telephone: (516) 535-4403
Telefax: (516) 873-8912
E:Mail: Michael.Brown@oandb.com
        Matthew.Bryant@oandb.com
        Zachary.Schurkman@oandb.com

*Attorneys for AmTrust North America, Inc. and
Technology Insurance Company, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| SAFEBUILT INSURANCE SERVICES, INC., a/k/a SAFEBUILT WHOLESALE INSURANCE SERVICES, INC., THE TAFT COMPANIES, LLC, PREFERRED GLOBAL HOLDINGS, INC, DAVID E. PIKE, DAVID E. PIKE, | Case No. MC-16-02-BLG-SPW-CSO  (Related Case SDNY Case Nos. 14-cv-9494, MC-16-01-BLG-SPW-CSO) |

INC., PHILIP SALVAGIO, SALMEN
INSURANCE SERVICES, INC., f/k/a
SALVAGIO, INC., CARL M. SAVOIA,
PACIFIC RE, INC, and PAC RE 5-AT,
a protected cell captive of PACIFIC RE,
INC.,

      Plaintiffs,

-vs-

AMTRUST NORTH AMERICA, INC.
and TECHNOLOGY INSURANCE
COMPANY, INC.,

      Defendants,

---

## BRIEF IN OPPOSITION TO MOTION FOR PROTECTIVE ORDER, TO QUASH SUBPOENAS, FOR EXPEDITED DISCOVERY STAY, AND FOR TRANSFER

Michael D. Brown, Esq.
Matthew Bryant, Esq.
Zachary G. Schurkman, Esq.
OHRENSTEIN & BROWN, LLP

Perry J. Schneider, Esq.
Hannah Stone, Esq.
MILODRAGOVICH, DALE &
STEINBRENNER, P.C.

*Attorneys for AmTrust North America, Inc. and
Technology Insurance Company, Inc.*

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT...................................................................... 1


RELEVANT BACKGROUND...................................................................... 2

   A.  AmTrust enters into a reinsurance agreement with Pacific Re...................... 2

   B.  AmTrust demands arbitration with Pacific Re and files a diversity action
      against the Individuals and Affiliated Companies........................................... 3

   C.  AmTrust subpoenas Pacific Re's regulatory counsel in Montana................ 4

   D.  AmTrust files a Miscellaneous Action in this District .................................. 5

   E.  AmTrust subpoenas CSI for deposition testimony ......................................... 6

   F.  Pacific Re, the Individuals and Affiliated Companies file this new action.... 7


ARGUMENT ......................................................................................... 8


   A.  ONLY PACIFIC RE HAS STANDING TO FILE THE MOTION TO
      QUASH AND ONLY ON THE GROUND OF "PRIVILEGE".................... 8


   B.  MONT. CODE ANN. § 33-28-108 DOES NOT CREATE A
      "PRIVILEGE" ............................................................................................. 112


   C.  INTERPRETING A MONTANA STATUTE DOES NOT WARRANT A
      TRANSFER TO NEW YORK ...................................................................... 16


   D.  PACIFIC RE'S GAMESMANSHIP MANDATES DENIAL OF THE
      STAY AND TRIGGERS 28 U.S.C. § 1927 ................................................. 188

# TABLE OF AUTHORITIES

## Cases

*American Health Systems, Inc. v. Liberty Health Sys.,*
    No. 90 Civ. 3112, 1991 WL 4405 (E.D. Pa. Sept. 19, 1991) ............................ 20

*Cal. Pub. Utilities Com'n,*
    892 F.2d 778 (9th Cir. 1989) ........................................................... 16

*City of Sterling Heights General Employees' Retirement System v. Prudential Financial Inc.*
    *et al.,* No. 12–5275, 2015 WL 1969368 (D.N.J. April 30, 2015) ................. 14, 15

*Crispin v. Christian Audigier, Inc.,*
    717 F. Supp. 2d 965 (C.D. Cal. 2010) ................................................. 10

*De'Omilia Plastic Surgery, PC v. Sweeton,*
    No. 12 Civ. 06415, 2013 WL 6070037 (D.N.J. Nov. 18, 2013) ........................ 21

*G.K. Las Vegas Ltd. Partnership v. Simon Property Group, Inc.,*
    No. 04 Civ. 01199, 2007 WL 119148 (D. Nev. Jan. 9, 2007) ............................ 8

*Goodwin v. City of Boston,*
    118 F.R.D. 297 (D. Mass. 1988) .................................................... 20, 21

*In re England,*
    375 F.3d 1169 (D.C. Cir. 2004) ....................................................... 11

*In re Grand Jury Subpoena Dated Dec. 17,*
    *1996,* 148 F.3d 487 (5th Cir. 1998) ................................................... 14

*In re REMEC, Inc. Sec. Litig.,*
    No. 04 Civ. 1948, 2008 WL 2282647 (S.D. Cal. May 30, 2008) ......................... 9

*In re Rhodes Cos., LLC,*
    475 B.R. 733 (D. Nev. 2012) ........................................................... 9

*Judicial Watch, Inc. v. Valle Del Sol, Inc.,*
    307 F.R.D. 30 (D.D.C. 2014) .......................................................... 17

*Langford v. Chrysler Motors Corp.,*
    513 F.2d 1121 (2d Cir. 1975) ......................................................... 10

*Malibu Media, LLC v. Does 1–25,*
    No. 12 Civ. 80193, 2012 WL 2367555 (S.D. Cal. 2012) .................................. 9

*Maple Creek Commons Homeowners Assoc. v. State Farm Fire and Casualty Co.,*
    No. 08 Civ. 00475, 2012 WL 14022 (S.D. Ind. Jan. 12, 2012) .......................... 14

*Moon v. SCP Pool Corp.,*
    232 F.R.D. 633 (C.D. Cal. 2005) ....................................................... 9

*Music Grp. Macao Commercial Offshore Ltd. v. Does,*
    82 F. Supp. 3d 979 (N.D. Cal. 2015) .................................................. 18

*Nguyen Da Yen v. Kissinger*,
    528 F.2d 1194 (9th Cir. 1975) .................................................................. 13
*Pioche Mines Consolidated, Inc. v. Dolman*,
    333 F.2d 257 (9th Cir. 1964) ................................................................... 20
*Roberts v. Lyons*,
    131 F.R.D. 75 (E.D. Pa. 1990) ............................................................... 19
*Sports Shooting Assn., Inc. v. State*,
    344 Mont. 1, 185 P.3d 1003 (2008) ........................................................ 12
*Sutherland v. Mesa Air Group, Inc.*,
    No. 98 Civ. 10061, 2003 WL 21402549 .................................................. 20
*Televisa, S.A. de C.V. v. Univision Commc'ns, Inc.*,
    No. 05 Civ. 3444, 2008 WL 4951213 (C.D. Cal. Nov. 17, 2008) ...................... 10
*U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*,
    2012 WL 5395249 (S.D.N.Y. Nov. 5, 2012) .............................................. 8
*United States v. Phoenix Union High Sch. Dist.*,
    681 F.2d 1235 (9th Cir. 1982) ................................................................. 13

## Statutes

28 U.S.C. § 1927 ................................................................................. 18, 21
Mont. Code Ann. § 1–2–101 ................................................................. 13, 16
Mont. Code Ann. § 33-1-409(6)(a) ............................................................. 13
Mont. Code Ann. § 33-1-409(6)(b)(iv) ........................................................ 13
MONT. CODE ANN. § 33-28-108 ............................................................... 11
Mont. Code Ann. § 33-28-108(b) ..................................................... 15, 17, 21
Mont. Code Ann. §§ 33-28-102, 33-28-108 .................................................. 4
Montana Code Annotated § 33-28-108(3) ............................... 5, 12, 15, 22
Montana Code Annotated § 33-28-108(3), and (2) ......................................... 5
Montana Code Annotated § 33-28-108(b)(3) ........................... 10, 11, 12, 14

## Rules

Fed. R. Civ. P. 26 .................................................................................... 7
Fed. R. Civ. P. 26(b)(1) ........................................................................... 16
Fed. R. Civ. P. 26(b)(5) ............................................................................. 5
Fed. R. Civ. P. 37(a)(2) ............................................................................. 5
Fed. R. Civ. P. 45 ............................................................................. 4, 7, 18
Fed. R. Civ. P. 6(d) ................................................................................. 19
Fed. R. Civ.P. 45(f) ................................................................................. 18
Fed. R. Evid. 501 ................................................................................... 17

**Other Authorities**

9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
§ 2459 (3d ed. 2008)............................................................................................ 11

AmTrust North America, Inc. and its affiliate insurer Technology Insurance Company, Inc. (collectively referred to as "AmTrust" herein) respectfully submit this Brief in Opposition to the "Motion For Protective Order, To Quash Subpoenas, For Discovery Stay, and For Transfer" filed by (1) Pacific Re, Inc. and PAC RE 5-AT; (2) David E. Pike, Philip Salvagio and Carl M. Savoia ("Individuals"), and (3) Safebuilt Insurance Services, Inc., The Taft Companies, LLC, Preferred Global Holdings, Inc., and Salmen Insurance Services, Inc. ("Affiliated Companies").[1]

## SUMMARY OF ARGUMENT

This second Miscellaneous Action is unnecessarily brought and raises the identical objections that the Movants have already made to disclosing the Commissioner of Securities and Insurance, Montana State Auditor's ("CSI") March 26, 2014 Findings of Fact and Conclusions of Law and Order Adopting the Examination Report For The Period Ending December 31, 2012 in *The Matter of the Examination of Pacific Re, Inc.*, Case No. INS-2014-20. In particular, Pacific Re raised these exact arguments in opposition to the fully briefed motion to compel

---

[1] AmTrust has adopted this nomenclature referring to (1) Pacific Re, (2) Individuals, and (3) Affiliated Companies to avoid confusion. As explained below, AmTrust is the Petitioner in the arbitration against Pacific Re, and the Plaintiff in litigation against the Individuals and Affiliated Companies. Thus, while *AmTrust* is technically a "defendant" in this miscellaneous action, such shorthand confuses AmTrust's role in the underlying arbitration and litigation. Finally, as explained below, PAC RE 5-AT lacks any capacity at all as a named party to sue or be sued under this Court's prior decision in *Pac Re 5-AT v. Amtrust N. Am., Inc.*, No. CV-14-131-BLG-CSO, 2015 WL 2383406, at *4-5 (D. Mont. May 13, 2015).

pending before this Court in *AmTrust North American, Inc. v. Safebuilt Insurance Services, Inc.*, No. 1:16-mc-00001-SPW-CSO.

Pacific Re and the other movants bring this action in an effort to block the deposition of CSI in ongoing litigation pending in the Southern District of New York that is scheduled for *today*, March 14, 2016 at 1 p.m. This deposition was noticed with CSI's explicit consent on March 2, 2016, and CSI has agreed to appear for today's deposition without objection. Pacific Re unnecessarily, and intentionally, filed this application for a stay on less than four days of notice to create its own emergency; it unnecessarily joins with each of the Defendants from the Southern District of New York, who have no standing here, to create the appearance of complication; it ignores the plain meaning of the Statute that applies; and asks this Court to allow it hide bad facts from discovery in the Southern District of New York. This motion should be denied in its entirety.

## RELEVANT BACKGROUND

### A.   AmTrust enters into a reinsurance agreement with Pacific Re

Pacific Re is a captive insurance company organized under the laws of *Montana*. See Pac Re 5-AT v. Amtrust North Am., Inc., No. 14 Civ. 131, 2015 WL 2383406, at *1 (D. Mont. May 13, 2015) (Ostby, J.). On October 1, 2010, AmTrust entered into a captive reinsurance agreement ("Reinsurance Agreement") with *Pacific* Re. See *id.* On the same day, Pacific Re agreed to create Pac RE 5–AT

2

("Cell 5"), a "protected cell" in which certain assets were placed. *See id.* Less than two years later, AmTrust terminated the Reinsurance Agreement.

**B.    AmTrust demands arbitration with Pacific Re and files a diversity action against the Individuals and Affiliated Companies**

In September 2014, AmTrust demanded arbitration with Pacific Re under Article 22 of the Reinsurance Agreement. AmTrust's claims against Pacific Re include, among other things, Pacific Re's failure to reimburse AmTrust for claims paid and Third Party Administrator fees as required by the contract. *See id.*

A month later, Cell 5 filed a complaint in this District seeking "a judicial declaration that, under Montana law, the proper party to be named in the "Demand for Arbitration is only Cell 5, and not also *Pacific* Re." Id. AmTrust answered and counterclaimed against Pacific Re seeking "a judicial declaration that Pacific Re is properly a party to the arbitration." *Id.* This Court subsequently granted AmTrust's motion for summary judgment holding that Pacific Re "is properly before the arbitration tribunal and will appropriately be bound by the results of the arbitration." *Id.* at *5.

In December 2014, Plaintiffs filed a complaint in the Southern District of New York ("Southern District Litigation") against the Individuals and Affiliated Companies. AmTrust seeks, *inter alia*, to claw back monies converted and fraudulently conveyed, and to pierce the corporate veils and hold the Individuals

3

and the Affiliated Companies liable for damages to AmTrust. Federal jurisdiction is based on diversity of citizenship.

**C.    AmTrust subpoenas Pacific Re's regulatory counsel in Montana**

In October 2015, counsel for AmTrust issued a subpoena under Fed. R. Civ. P. 45 on Moulton Bellingham P.C. ("Moulton"). (Ex. 1.)[2] Moulton is not a party to the arbitration or the action in the Southern District Litigation but rather Pacific Re's regulatory and corporate counsel in Montana. As a captive insurance company in Montana, Pacific Re is subject to CSI's authority and examination. *See* Mont. Code Ann. §§ 33-28-102, 33-28-108.

AmTrust's subpoena demanded *non-privileged* documents, records and communications with CSI. (Ex. 1, at 3.) Moulton responded by producing (1) the CSI's Findings of Fact and Conclusion of Law and Order of Adopting the Examination Report for the Period Ending December 31, 2012, (2) orders issued by the CSI, and (3) a small set of working papers (collectively, "Examination Documents").

On December 29, 2015, counsel for the Individuals and Affiliated Companies in Southern District Litigation objected to the use of the Examination

---

[2] "Ex. 1"- "Ex. 16" refer to the sixteen exhibits attached to the Declaration of Perry J. Schneider, Esq. filed with AmTrust's Opening Brief in the related action in this District, *AmTrust North America, Inc., et al. v. Safebuilt Insurance Services, Inc.*, et al., Case No. MC 16-1-BLG-SPW- CSO. The Opening Brief was submitted in support of AmTrust's Motion to Enforce Subpoenas and Compel Discovery, which is now fully briefed.

Documents during a deposition. (Ex. 17.)[3] Counsel stated that they would request

Moulton claw back the production of the Examination Documents.

Moulton sent two letters to AmTrust's counsel asking for the produced

documents to be destroyed. (Ex. 5, Ex. 10.) However, the letters did not claim that

documents were "privileged" or that the Montana Insurance Code had created an

"insurance examination privilege" for captive insurance companies. Nor did

Moulton ever assert that the Examination Documents should be retracted pursuant

to Fed. R. Civ. P. 26(b)(5), which covers the accidental production of privileged

information. Rather, Moulton's letters merely maintained that the Examination

Documents were "confidential" under Montana Code Annotated § 33-28-108(3)

and that they should be destroyed. (Ex. 5, Ex. 10.)

**D.    AmTrust files a Miscellaneous Action in this District**

On February 16, 2016, AmTrust filed a Miscellaneous Action in this District

seeking (1) an order defining the scope of Montana Code Annotated § 33-28-

108(3), and (2) compelling production of the Examination Documents by Moulton.

*See AmTrust North America, Inc., et al. v. Safebuilt Insurance Services, Inc., et al.,*

Case No. 1:16-mc-00001-SPW-CSO ("MCA Motion No. 1"). This Court has

jurisdiction over the dispute. *See* Fed. R. Civ. P. 37(a)(2) (stating a "motion for an

---

[3] "Ex. 17" refers to the exhibit attached to AmTrust's Reply Brief in *AmTrust North America, Inc., et al. v. Safebuilt Insurance Services, Inc.,* et al., Case No. MC 16-1-BLG-SPW- CSO.

order to a nonparty must be made in the court where the discovery is or will be taken.").

AmTrust's MCA Motion No. 1 to compel is now fully briefed.

**E.   AmTrust subpoenas CSI for deposition testimony**

On March 2, 2016, AmTrust issued a subpoena on CSI to designate a person to be deposed in Helena, Montana on March 14, 2016. This date was selected with CSI's advice and consent. AmTrust also gave notice to counsel for the Individuals and Affiliated Companies, as they are the defendants in the Southern District Litigation.

AmTrust's subpoena designates five topics for the deposition including: (1) the creation, formation, and approval of Cell 5; (2) the request for and the approval and merger of Cell 5 into the core by The Taft Companies, LLC; (3) the reversal of Cell 5 merger; (4) policy wording changes and approvals from July 1, 2011, and through May 31, 2012, for Pacific Re and a related company; and (5) the Examination of Pacific Re, Inc. as of December 31, 2012, and subsequent Orders of Supervision.

Notably, CSI has not asserted any objections to being deposed on these topics. Moreover, to protect Pacific Re's supposed rights to privilege, CSI and AmTrust have agreed to conduct the examination regarding CSI's Examination of Pacific Re on a separate transcript sealed pending this Court's resolution of the

6

prior pending motion. This way, if Pacific Re prevails on its dubious statutory interpretation creating a purported privilege to avoid disclosure of CSI's Findings of Fact and Conclusions of Law in the Mater of the Examination of Pacific Re, Inc. for the Period Ending December 31, 2012, then the sealed transcript will remain sealed and be returned to Pacific Re or otherwise destroyed.

**F.    Pacific Re, the Individuals and Affiliated Companies file this new action**

On March 10, 2016, *two business days before the deposition*, Pacific Re, the Individuals and Affiliated Companies filed a new miscellaneous action in this District seeking an order either:

> (1)    staying enforcement of the subpoena on an expedited basis pending the adjudication of this Motion as well as the Motion to Compel, and transferring its Motion to the Southern District of New York for adjudication;

> (2)    or in the alternative, if this Court does not transfer the action, quashing AmTrust's subpoena under Fed. R. Civ. P. 45, and precluding the discovery sought by the subpoena under Fed. R. Civ. P. 26.

(MB Br. at 30.)[4] *Safebuilt Ins. Svc's et al v. AmTrust N. Am, Inc. et al*, 1:16-mc-00002-SPW-CSO ("MCA Motion No. 2").

While purportedly seeking an "expedited order" to prevent the deposition from taking place on March 14, 2016, counsel for Pacific Re, the Individuals and

---

[4] "MB Br." refers to the brief submitted by Moulton Bellingham PC, counsel for Pacific Re, the Individuals and Affiliated Companies in this action (MC 16-2-BLG-SPW- CSO).

7

Affiliated Companies served process on March 10, 2016 by regular First Class mail from Montana to the undersigned counsel's P.O. Box in Garden City, New York. *See* MB Br. at 32 ("Certificate of Compliance"). Indeed, this action is the only item AmTrust can recall being served by First Class mail in this entire litigation. AmTrust's local Montana counsel was not served. AmTrust was not served. Movants neither provided all counsel of record in MCA Motion No. 1 courtesy copies of the MCA Motion No. 2 nor filed cross-notices in either MCA Motion No. 1 or the Southern District of New York litigation.

## ARGUMENT

### A.   ONLY PACIFIC RE HAS STANDING TO FILE THE MOTION TO QUASH AND ONLY ON THE GROUND OF "PRIVILEGE"

Only Pacific Re has standing to challenge the deposition of CSI. The other movants must be dismissed from this action for lack of standing (the Individuals, and Affiliated Companies) or lack of capacity to sue (Cell 5).

It is well established that a party "lacks standing to challenge, on grounds of relevance or burden, a subpoena served on a non-party." *U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, 2012 WL 5395249 (S.D.N.Y. Nov. 5, 2012); *see also G.K. Las Vegas Ltd. Partnership v. Simon Property Group, Inc.*, No. 04 Civ. 01199, 2007 WL 119148, at *3 (D. Nev. Jan. 9, 2007) ("A party's objection that the subpoena issued to the non-party seeks irrelevant information or imposes an undue burden on the nonparty are not grounds on which a party has standing to move to

quash a subpoena issued to a non-party, especially where the non-party, itself, has not objected.").[5]

Non-party CSI does not object to being deposed, and no party to litigation in the Southern District (the Individual and Affiliated Companies) or the arbitration (Pacific Re) may move to quash the subpoena on the ground that the deposition of CSI is burdensome or the information sought is irrelevant. *See Malibu Media, LLC v. Does 1–25*, No. 12 Civ. 80193, 2012 WL 2367555, at *2 (S.D. Cal. 2012); *see also In re Rhodes Cos., LLC*, 475 B.R. 733, 740 (D. Nev. 2012).

To the extent that Pacific Re, the Individuals and Affiliated Companies assert "embarrassment" or "annoyance," the proper course is to request a protective order. *See Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005); *see also In re REMEC, Inc. Sec. Litig.*, No. 04 Civ. 1948, 2008 WL 2282647, at *1 (S.D. Cal. May 30, 2008) ("Several Courts within the Ninth Circuit . . . have recognized this sound principle of law."). In this case a protective order has already been entered and it addresses any concerns that Pacific Re, the Individuals and Affiliated Companies could assert.

---

[5] *See also* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2459 (3d ed. 2008) ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought.").

Finally, it is true that courts make an exception if the party seeking to challenge the subpoena is asserting a privilege. *See Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 973 (C.D. Cal. 2010) (collecting cases). "Otherwise put, a party may not quash a subpoena served upon a non-party on any grounds other than privilege." *Televisa, S.A. de C.V. v. Univision Commc'ns, Inc.*, No. 05 Civ. 3444, 2008 WL 4951213, at *1 (C.D. Cal. Nov. 17, 2008); *see also Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975) ("In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness.").

The only party to this action that has standing to even attempt to assert an "insurance examination privilege" under Montana Code Annotated § 33-28-108(b)(3) is *Pacific* Re, the captive insurance company that was examined by CSI. Nor does Cell 5 (*i.e.*, PAC RE 5-AT) have any capacity at all as a named party to sue or be sued. *Pac Re 5-AT v. Amtrust N. Am., Inc.*, No. CV-14-131-BLG-CSO, 2015 WL 2383406, at *4 (D. Mont. May 13, 2015).

The single issue for this Court to resolve in both MCA Motion Nos. 1 and 2, is whether Pacific Re has an "insurance examination privilege" under Section 33-28-108(b)(3). The issue of whether Section 33-28-108(b)(3) creates such a privilege (or, in the alternative, merely deems certain documents to be confidential

from public view absent a court order or the company's consent) has been fully briefed in MCA Motion No. 1 and is discussed again below.

The Movants herein have no good reason to clutter the caption and name all the Southern District of New York Defendants or Pacific Re' fictitious cell. The only plausible reason in doing so is to make the issue appear more complicated than it is.[6]

## B.  MONT. CODE ANN. § 33-28-108 DOES NOT CREATE A "PRIVILEGE"

The Montana Code Annotated does not create a privilege from discovery in this case. This issue has already been fully briefed in MCA Motion No. 1. Given Pacific Re's new 31-page brief repeatedly asserting "privilege," Pacific Re's counsel would have done well to remember "Justice Frankfurter's timeless advice on statutory interpretation: (1) Read the statute; (2) read the statute; (3) read the statute." *In re England*, 375 F.3d 1169, 1182 (D.C. Cir. 2004).  Mont. Code Ann. § 33-28-108(b)(3) states:

> . . . . all examination reports, preliminary examination reports or results, working papers, recorded information, documents, and their copies produced by, obtained by, or disclosed to the commissioner or any other person in the course of an examination made under this section are ***confidential***, are not subject to subpoena, and may not be made public by the commissioner or an employee or agent of the commissioner

---

[6] To this end, AmTrust specifically reserves all rights to bring a formal cross-motion that time constraints imposed by Defendants' delays and improper service have made impossible.

> *without the written consent of the company or upon court order.*

*Id.* (emphasis added).

*First*, Mont. Code Ann. § 33-28-108(b)(3) only applies to "examination reports, preliminary examination reports or results, working papers, recorded information, documents, and their copies." *Id.* Nothing in the statute prohibits a party from seeking testimony in a deposition from a representative of CSI on topics covered by one of its examinations. As the Montana legislature has made clear: "In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Mont. Code Ann. § 1–2–101; *see also Mont. Sports Shooting Assn., Inc. v. State,* 344 Mont. 1, 185 P.3d 1003, 1006 (2008).

*Second*, Mont. Code Ann. § 33-28-108(b)(3) does not use the word "privilege." It uses the word "confidential." To hold Mont. Code Ann. § 33-28-108(3) creates a "privilege" when it uses the word "confidential" makes no sense, especially because the statute allows it to be overridden "upon court order." By their nature, privileges may not be overridden by court order.

*Third*, other provisions of the Montana Insurance Code (*i.e.*, Title 33 of the Montana Code Annotated) contain the word "privilege," which demonstrates that the legislature knows how to use the word privilege when it wants. In particular,

12

Chapter 1 is entitled "Administration and General Provisions." Part 4 of this chapter covers insurance companies that are not captives and is entitled "Examinations by Department." Section 409(6)(a) of Part 4 states:

> ***Working papers must be given confidential treatment, are not subject to subpoena, are not discoverable or admissible as evidence in any private action,*** and may not be made public by the commissioner or any other person except to the extent provided in 33-1-311(5) and subsection (5) of this section. Persons given access to working papers shall agree, prior to receiving the information, to treat the information in the manner required by this section unless prior written consent has been obtained from the company to which the working papers pertain.

Mont. Code Ann. § 33-1-409(6)(a). Working papers are defined as documents involving, *inter alia*, "trade secrets . . . that have been obtained by or disclosed to the commissioner or any other person in the course of an examination made under this part for which there are reasonable grounds of ***privilege*** that are asserted by the party claiming ***the privilege***." Mont. Code Ann. § 33-1-409(6)(b)(iv) (emphasis added).

*Fourth*, the legislature's distinctions in the Montana Insurance Code between confidentiality and privilege makes perfect sense given that courts have long drawn the same distinctions. *See, e.g., Nguyen Da Yen v. Kissinger*, 528 F.2d 1194, 1205 (9th Cir. 1975) ("The records are confidential but not privileged."); *United States v. Phoenix Union High Sch. Dist.*, 681 F.2d 1235, 1237 (9th Cir. 1982) (confidentiality statute "prohibit[s] voluntary public disclosure" but "not

13

disclosure pursuant to a legitimate legal inquiry") (citation and quotation marks omitted); *In re Grand Jury Subpoena Dated Dec. 17, 1996*, 148 F.3d 487, 492 (5th Cir. 1998) (communications under statute were "confidential" but not privileged).

*Fifth*, two federal courts have held that confidential insurance examination statutes do not create a "privilege." *See City of Sterling Heights General Employees' Retirement System v. Prudential Financial Inc. et al.*, No. 12–5275, 2015 WL 1969368 (D.N.J. April 30, 2015) ("*Sterling Heights*"); *Maple Creek Commons Homeowners Assoc. v. State Farm Fire and Casualty Co.*, No. 08 Civ. 00475, 2012 WL 14022 (S.D. Ind. Jan. 12, 2012) ("*Maple Creek*"). In *Sterling Heights*, the Honorable Madeline Cox Arleo held that an "insurance examination privilege" does not exist even though "each state has enacted a confidentiality statute with respect to the conduct of insurance examinations." *Id.*, at *4. In *Maple Creek*, the court held that the plaintiffs were entitled to discovery of the confidential documents, notwithstanding a statutory bar that is virtually identical in language to the Montana Code relied on by Pacific Re. *See Maple Creek*, 2012 WL 14022 at *2-3.

*Sixth*, the confidentiality provision for examination papers does not apply if a party has the "written consent of the company." Mont. Code Ann. § 33-28-108(b)(3). Here, the Reinsurance Agreement gives AmTrust the right to "inspect and make copies at its own expense of all non-privileged records of the other party

14

relating to business reinsured hereunder in whatever form such records are maintained." (Ex. 8, at Art. 19.) Since the documents are not privileged, AmTrust has the right to inspect them and make copies of them.

*Seventh*, Mont. Code Ann. § 33-28-108(b) also states that the documents are not subject to subpoena if there is a "court order."[7] Given this crystal-clear language, even Pacific Re would seemingly have to concede that regardless of the overwhelming force of the arguments above, if this Court issues an order, Mont. Code Ann. § 33-28-108(b) protections no longer apply to the examination report at issue. To argue otherwise would be to "omit what has been inserted" in interpreting the statute as written by the legislature. Mont. Code Ann. § 1–2–101.

In sum, under the plain language of the statute, Mont. Code Ann. § 33-28-108(3) does not apply to deposition testimony. It merely creates a confidential provision for examination papers related to captive insurance companies that may be overridden by the consent of the insurance company or "by court order." Pacific Re has already consented to the examination of non-privileged documents. Moreover, under the plain language of the statute, this court may lift the confidential provisions in the context of this litigation and subject them to the

---

[7] Indeed, as argued in MCA Motion No. 1, the court in the Southern District litigation has already issued discovery rulings that would include disclosure of the examination report.

existing protective order, which AmTrust respectfully submits should be done forthwith in resolving Pacific Re's motion.

## C. INTERPRETING A MONTANA STATUTE DOES NOT WARRANT A TRANSFER TO NEW YORK

This action and motion (MCA Motion No. 2) should not be transferred to the Southern District of New York. Transfers are only warranted where the deponent consents or upon extraordinary circumstances. Neither apply here and the facts mandate resolution in Montana.

Movants' only argument in support of a transfer is that "[g]iven the complicated history of this case, which includes these events, Magistrate Judge Cott and the presiding SDNY Judge (Hon. Colleen McMahon) are better situated to adjudicate this dispute." MB Br. at 23. Movants completely ignore the presiding Magistrate Judge's observation from the Southern District of New York:

> You want a federal magistrate judge in the Southern District of New York to opine on a question of first impression on Montana law? That strikes me as wildly irrational on many fronts.
>
> (Sep. 2, 2015 Motion Conf. Tr. 81:15-18, Cott, M.J.)

Pacific Re ignores that New York choice of law rules will defer back to Montana. *Cal. Pub. Utilities Com'n*, 892 F.2d 778, 781 (9th Cir. 1989) (holding questions of privilege controlled by state law); *see also* Fed. R. Civ. P. 26(b)(1) (stating that parties "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action"); *see also*

16

Fed. R. Evid. 501 (in diversity actions, "the privilege of a witness . . . shall be determined in accordance with State law."). Judge Cott's observation should be taken at face value.

Nor is this motion complicated. It turns on a single question of statutory interpretation: Does Pacific Re, the respondent in a pending arbitration and the only entity with standing on this motion, have a "privilege" to prevent the deposition of CSI under the plain language of Mont. Code Ann. § 33-28-108(b)? The transfer request is merely a dilatory tactic to allow the Southern District Defendants (against whom there are alter ego, fraudulent conveyance, and conversion claims) to continue to avoid CSI's Findings of Fact and Conclusions of Law that tend to prove the allegations pending the Southern District.

CSI has not objected to the subpoena or consented to the transfer. The movants here ignore that "[t]he prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions." Fed. R. Civ.P. 45(f) advisory committee's notes). Ultimately, the court must balance the interest of local resolution against factors such as judicial economy and risk of inconsistent rulings. *See, e.g., Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C. 2014).

Transferring the matter 2,200 miles away could require CSI, the Montana tax-payer-funded non-party deponent, to retain New York counsel or even incur travel and lodging charges should the Magistrate Judge in New York need to supervise or rule on the deposition.

Both MCA Motion Nos. 1 and 2 are controlled by Montana statue and should be resolved here. Pacific Re has completely failed to meet its burden of showing that exceptional circumstances are present. *See* Fed. R. Civ. P. 45 Advisory Comm. Notes (2013); *see also Music Grp. Macao Commercial Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 984 (N.D. Cal. 2015). There is no good reason for this Court to transfer a motion to quash a subpoena to New York that turns on interpreting Montana law, increases the risk of inconsistent rulings and significantly burden's a representative of Montana's insurance commissioner.

## D.   PACIFIC RE'S GAMESMANSHIP MANDATES DENIAL OF THE STAY AND TRIGGERS 28 U.S.C. § 1927

There is no emergency and the stay should be rejected. The Southern District Plaintiffs served the Notice of Subpoena for CSI's Deposition on March 2, 2016. CSI did not object and the March 14, 2016 date was chosen by CSI as being most convenient. On March 3, 2016, New York counsel for the Movants requested AmTrust withdraw the subpoena, and the request was declined. The Movants did not act with any urgency even as the prior MCA Motion No. 1 was still being briefed.

18

Instead, the Movants filed this new action and served process by regular mail from Billings, Montana to a P.O. Box in Garden City, New York, on March 10, 2016. Movants neither sent a courtesy copy to all counsel of record in the pending matter, nor did they serve AmTrust's local counsel in Montana, nor did they file any cross-notice in MCA Motion No. 1. AmTrust's counsel in New York first received actual notice by email courtesy notification on March 11, 2016 at 6:19 P.M. on the Friday before the depositions were scheduled to proceed Monday. Had movants herein simply filed an "emergency" request in MCA Motion No. 1, PACER would have effectuated service instantaneously.

MCA Motion No. 2 nevertheless seeks a stay of the deposition on less than four days' notice. Having elected to serve by mail rather than PACER or local counsel in Montana, New York counsel would be entitled to at least three days to respond following receipt of process. *See* Fed. R. Civ. P. 6(d) (providing for three additional days when served by mail).

It is respectfully submitted that such obvious gamesmanship should not be countenanced. *See Roberts v. Lyons*, 131 F.R.D. 75, 84 (E.D. Pa. 1990) ("a lawyer should not ignore known customs or practice of the Bar of a particular Court even when the law permits without giving timely notice to the opposing counsel") (quotation marks and citation omitted).

19

Pacific Re's counsel cannot benefit from a self-created "emergency" by filing a new action and motion two business days before a deposition is to take place. *See Goodwin v. City of Boston*, 118 F.R.D. 297, 298 (D. Mass. 1988) ("The filing of a motion to quash or a motion for protective order does not automatically operate to stay a deposition or other discovery."); *American Health Systems, Inc. v. Liberty Health Sys.*, No. 90 Civ. 3112, 1991 WL 4405, at *3 (E.D. Pa. Sept. 19, 1991) ("the filing of a Motion to Quash or a Motion for Protective Order *does not automatically* operate to stay a deposition or other discovery") (emphasis in original); *Sutherland v. Mesa Air Group, Inc.*, No. 98 Civ. 10061, 2003 WL 21402549, at *5 and n.10 (S.D. Fla. June 6, 2003) (holding that the filing of a motion for protective order alone does not relieve counsel of obligation to attend the depositions; the obligation to comply dissipates only if the court grants the motion); *Pioche Mines Consolidated, Inc. v. Dolman*, 333 F.2d 257, 269 (9th Cir. 1964).[8]

As courts have repeatedly held:

> When it appears that a Court is not going to be able to decide a
> motion to quash or a motion for protective order before the date
> set for a deposition, counsel for the movant should contact
> counsel for the party noticing the deposition and attempt to
> reach an agreement staying the deposition until after the Court
> acts on the motion to quash and/or the motion for a protective

---

[8] Due to the dilatory tactics of Pacific Re's counsel, no order was entered by Saturday. After being sent the motion, CSI stated they would proceed if the court did not stay the deposition.

> order. If agreement cannot be reached, it is incumbent on
> counsel for the movant to file a motion to stay the deposition
> until the Court acts on the motion to quash and/or for a
> protective order . . . .

*Goodwin v. City of Boston*, 118 F.R.D. 297, 298 (D. Mass. 1988). Pacific Re's

counsel never attempted to reach an agreement on a stay with counsel for AmTrust

pending its motion to quash, but instead started a new action and motion two

business days before the deposition was scheduled while serving the papers in the

slowest manner available.

Moreover, "innocent non-party witnesses should not bear the cost and

inconvenience of [a] proposed stay when they have already made arrangements

with their employers to take time off from work to attend depositions." *De'Omilia*

*Plastic Surgery, PC v. Sweeton*, No. 12 Civ. 06415, 2013 WL 6070037, at *5

(D.N.J. Nov. 18, 2013) (denying motion for a stay).

Nothing supports Pacific Re's assertion that Montana's examination statute

gives it a privilege. Mont. Code Ann. § 33-28-108(b) merely deems certain

documents "confidential" and provides that such confidentiality may be overridden

with the consent of the company or court order. Pacific Re's gamesmanship herein

appears to be undertaken expressly to delay and multiply the proceedings.

Accordingly, Defendants hereby put Movants on notice and reserve their rights to

seek fees and sanctions pursuant to 28 U.S.C. § 1927 pending the outcome of

MCA Motion No. 1.

**CONCLUSION**

AmTrust North America, Inc. and its affiliate insurer Technology Insurance Company, Inc. (referred to as "AmTrust" in this brief) respectfully requests that this Court issue an order:

(1) dismissing David E. Pike, Philip Salvagio and Carl M. Savoia (referred to as "Individuals" in this brief), and Safebuilt Insurance Services, Inc., The Taft Companies, LLC, Preferred Global Holdings, Inc., and Salmen Insurance Services, Inc. (referred to as "Affiliated Companies" in this brief) for lack of standing;

(2) dismissing *PAC RE 5*-AT for lacking any capacity as a named party to sue or be sued under this Court's prior decision in *Pac Re 5-AT v. Amtrust N. Am., Inc.*, No. CV-14-131-BLG-CSO, 2015 WL 2383406, at *4 (D. Mont. May 13, 2015);

(3) denying Pacific Re's motion to transfer the deposition to the Southern District of New York;

(4) denying Pacific Re's motion to quash the subpoena served on a non-party on the ground that Mont. Code Ann. § 33-28-108(3) does not grant it an "insurance examination privilege;" and

(5) denying Pacific Re's motion to stay the deposition scheduled for today, March 14, 2016, at 1 p.m.

Dated:      March 14, 2016


                    **MILDRAGOVICH, DALE &**
          **STEINBRENNER, P.C.**

                    By: /s/Perry J. Schneider
                              Perry J. Schneider, Esq.
                    *Attorneys for Plaintiffs*

                    **OHRENSTEIN & BROWN, LLP**
                    By: /s/Michael D. Brown
                              Michael D. Brown, Esq.
                              Matthew Bryant, Esq.
                              Zachary G. Schurkman, Esq.
                    *Attorneys for Plaintiffs (Pending pro hac vice*
                    *application)*

## CERTIFICATE OF COMPLIANCE

The undersigned does hereby certify that pursuant to Local Rule 7.1(d)(2), this Brief in Opposition to the "Motion For Protective Order, To Quash Subpoenas, For Discovery Stay, and For Transfer":

Does not exceed 6500 words (briefs in support of motion and response briefs) or 3250 words (reply briefs).

This brief contains 5,326 words.

Dated:        March 14, 2016

**MILDRAGOVICH, DALE & STEINBRENNER, P.C.**

By: /s/Perry J. Schneider
        Perry J. Schneider, Esq.
        *Attorneys for Plaintiffs*

**OHRENSTEIN & BROWN, LLP**
By: /s/Michael D. Brown
        Michael D. Brown, Esq.
        Matthew Bryant, Esq.
        Zachary G. Schurkman, Esq.
        *Attorneys for Plaintiffs (Pending pro hac vice application)*

24